**Rebecca Mae CROSS, Appellant,**

v.

**UNITED STATES POSTAL SERVICE; The Board of Governors of the United States Postal Service; M.A. Wright; R.E. Holding; Charles H. Codding; William A. Irvine; Crocker Nevin; Hayes Robertson and Benjamin F. Bailar, Appellees.**

Nos. 83–1305, 83–1761.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1983.

Decided May 14, 1984.

Rehearing and Rehearing En Banc Granted June 28, 1984.

Order on Reconsideration En Banc Sept. 20, 1984.

---

Sherry A. Cagnoli, Asst. Gen. Counsel, Kevin B. Rachel, Atty., Office of Labor Law, U.S. Postal Service, Washington, D.C., for appellees.

Kenneth M. Chackes, Chackes & Hoare, St. Louis, Mo., for appellant.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

■ Rebecca Mae Cross has prevailed in her action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, as amended in 1972, against the United States Postal Service and its Board of Governors (USPS) for refusal to hire her because of her race. *See Cross v. United States Postal Service*, 639 F.2d 409 (8th Cir.1981), *rev'g*, 483 F.Supp. 1050 (E.D.Mo. 1979). On remand, the District Court proceedings included determinations of back pay, attorneys' fees, and expenses.[1] The issue on this appeal is whether Cross was entitled to prejudgment interest on her monetary award. We affirm the District Court's denial of prejudgment interest.

■ Although prejudgment interest on monetary awards under Title VII is available in actions against private employers, *see, e.g., Washington v. Kroger Co.*, 671 F.2d 1072, 1078 (8th Cir.1982), interest awards in actions against a governmental unit raise sovereign immunity issues. *See,*

---

1. USPS argues that this Court lacks jurisdiction to hear the appeal because there was no entry of final judgment by the District Court when Cross filed her notice of appeal. Premature filing of the notice of appeal bars appellate jurisdiction. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). However, after the District Court entered a final judgment on June 8, 1983, a supplemental notice of appeal was filed timely. Accordingly, there is no merit in USPS's jurisdictional argument.

*e.g., Brown v. GSA,* 425 U.S. 820, 833–34, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976). The general rule is that the federal government, as sovereign, is immune from suit save as it consents to be sued; the terms of consent define the extent of the plaintiff's rights and the court's jurisdiction to entertain the suit. *See Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (no right to trial by jury in age discrimination suit by federal employees); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) (federal court has no jurisdiction under Tucker Act over suits against the United States by a creditor of a party to a contract with the United States which the United States has breached); *Bor-son Bldg. Corp. v. Heller,* 572 F.2d 174 (8th Cir.1978) (remedy under Federal Tort Claims Act is exclusive despite statutory authority of any federal agency to "sue and be sued"). The question then is whether Congress has waived common law sovereign immunity with regard to prejudgment interest on money judgments against the USPS in Title VII cases.

If a waiver of immunity with respect to interest is to be found at all, it must be found in the statute that gives rise to the cause of action. *See Murray v. United States,* 686 F.2d 1320, 1325 (8th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Garcia v. United States,* 666 F.2d 960, 966 (5th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). In 1972, Congress amended Title VII, making it applicable for the first time to the federal government. *See* 42 U.S.C. § 2000e–16. These amendments created "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown,* 425 U.S. at 829, 96 S.Ct. at 1966. The mere fact that these amendments of Title VII are remedial does not mean that we should liberally construe them to allow prejudgment interest against an arm of the federal government. Every statute that waives sovereign immunity is remedial. *See Monark Boat Co. v. NLRB,* 708 F.2d 1322, 1327 (8th Cir.1983) (construing Equal Access to Justice Act). Both the amended Title VII and its legislative history are silent with regard to interest awards against the government. Congress has not expressed an affirmative intention to allow interest.[2] *Cf.* 42 U.S.C. § 2000e–5(k) (specifically excluding the United States as a prevailing party from an attorney's fee award and specifically making it liable for costs). We agree with several other circuits that there is no provision in Title VII, as amended in 1972, that overcomes the sovereign immunity barrier regarding prejudgment interest and therefore that prejudgment interest is not available in Title VII actions against the government. *See Saunders v. Claytor,* 629 F.2d 596 (9th Cir.1980), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981) (Title VII action against the Navy); *Blake v. Califano,* 626 F.2d 891, 894–95 (D.C.Cir.1980) (Title VII action against HEW); *deWeever v. United States,* 618 F.2d 685 (10th Cir.1980); *Fischer v. Adams,* 572 F.2d 406, 411 (1st Cir.1978) (Title VII action against Dept. of Transportation); *Richerson v. Jones,* 551 F.2d 918, 925 (3rd Cir.1977) (Title VII action against the Navy). We have been

---

**2.** The Supreme Court has suggested that interest cannot be recovered against the government absent an express provision for interest in a relevant statute or contract. *See, e.g., United States v. Thayer-West Point Hotel Co.,* 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947). But some cases suggest that the statute must simply evince the intention to allow interest. *See, e.g., Smyth v. United States,* 302 U.S. 329, 353, 58 S.Ct. 248, 252, 82 L.Ed. 294 (1937); *Standard Oil Co. v. United States,* 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519 (1925) (where United States issues insurance policies in familiar form and consents to suit, it is subject to incidents of suits in insurance business); *cf. Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (no recovery of attorneys' fees against United States because no waiver of immunity); *NAACP v. Civiletti,* 609 F.2d 514, 518 (D.C.Cir.1979), *cert. denied,* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980) (no recovery of attorneys' fees against United States because no waiver of immunity). We do not have to choose between the two alternative approaches because we do not believe Congress either expressly or impliedly has authorized interest in a Title VII action against a governmental entity.

unable to find a contrary decision from any of the circuit courts of appeals.

Cross attempts to avoid the impact of this clear line of authority by means of an argument based upon the Postal Reorganization Act of 1970, 39 U.S.C. §§ 101–5605 (the Reorganization Act), which contains a broad waiver of sovereign immunity. Under the Reorganization Act, Congress provided the USPS with the power "to sue and be sued in its official name." 39 U.S.C. § 401(1). Section 401(1), Cross argues, removed the barrier of common law sovereign immunity that prevents an award of interest against the federal government; prejudgment interest was therefore among the remedies available when Congress made Title VII applicable to the USPS in 1972. This argument is ingenious, but we do not find it persuasive.[3]

To adopt Cross's argument, we would have to believe that Congress intended to place postal employees in a better position than all other federal employees with respect to prejudgment interest in Title VII cases. Congress, however, consistently has treated postal employees the same as other federal employees for purposes of laws enforcing equal employment opportunity. There is nothing to suggest that the remedies available to postal employees in Title VII cases should differ from those available to other federal employees in such cases. The Reorganization Act and its legislative history establish conclusively that under that Act, postal employees were to be treated as other federal employees for equal employment opportunity purposes. Although Congress expressly stated that the general nondiscrimination policy found in 5 U.S.C. §§ 7201–11 (Chapter 72) and the provisions of Title VI of the

1964 Civil Rights Act should apply, it did not mention Title VII in the Reorganization Act and it did not amend the Reorganization Act after 1972 to include reference to Title VII. *See* 39 U.S.C. § 410(b)(1), § 410(b)(6).

At the time the Reorganization Act was pending in Congress, the discussion on the House floor suggested that the Senate version of the Reorganization bill would have applied the provisions of Title VII, then applicable only to the private sector, to postal employees. 116 Cong.Rec. 27,597–98 (1970) (statements of Representatives Hawkins and Daniels). The conference committee, however, rejected this suggestion and the bill as enacted into law provided that discrimination complaints against the USPS would continue to be heard by the Civil Service Commission, as in the case of other federal sector employers at that time. *See* 39 U.S.C. § 410.

There is thus no basis upon which to infer that Congress intended the 1970 Reorganization Act's "sue and be sued" clause to affect the remedies available to postal employees under the 1972 amendments to Title VII. Accordingly, we need not decide whether the clause would waive immunity for the purpose of allowing prejudgment interest were the clause applicable to the matter of remedies in the instant case.

For the reasons set forth above, we hold that Congress has not waived sovereign immunity with regard to prejudgment interest in actions against the USPS under Title VII. The judgment of the District Court is affirmed.

ARNOLD, Circuit Judge, dissenting.

The Court's analysis is founded on the assumption that because the plaintiff's

---

**3.** Cross relies on the only decision allowing prejudgment interest against the USPS—*Milner v. Bolger*, 546 F.Supp. 375 (E.D.Cal.1982). The *Milner* court analyzed the scope of the "sue and be sued" clause in the USPS enabling act under the rubric of *FHA v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). In *Burr*, the Supreme Court held that a "sue and be sued clause" in the National Housing Act made the Federal Housing Administration subject to garnishment for moneys due to an employee. In so holding the

Court remarked that "clearly the words 'sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings." *Id.* at 245, 60 S.Ct. at 490. Unlike the district court in *Milner,* we believe the controlling statute is Title VII. *Burr* and the line of cases following it are thus inapposite to the issue in this case. We disagree with the *Milner* court's method of analysis, and we decline to adopt either its reasoning or its conclusion.

cause of action arose under Title VII, any waiver of sovereign immunity with respect to prejudgment interest must be found in Title VII rather than in the Postal Reorganization Act of 1970, 39 U.S.C. § 401(1). Neither of the cases cited for this novel proposition goes so far. *Murray v. United States*, 686 F.2d 1320, 1324–25 (8th Cir. 1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983), rejected the argument "that a waiver of sovereign immunity must be implied where it is alleged that the IRS has failed to comply with the seizure and sale provisions in the Internal Revenue Code," because, otherwise, "the IRS would be free to violate Congressional mandates with impunity." *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. Unit B), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982), held that Title V of the Organized Crime Control Act does not waive sovereign immunity so as to enable a former protected witness to sue for damages for his allegedly wrongful expulsion from the federal Witness Protection Program. Both of these cases merely applied the well-established rule that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Neither case held that a clear waiver found in one statute cannot be given effect in a case arising under another statute.

Section 401(1) of Title 39 provides:
The Postal Service shall have the following general powers:
(1) to sue and be sued in its official name ....

In *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Supreme Court held that a "sue-and-be-sued" clause rendered the FHA subject to state garnishment proceedings. The Court said,

[W]e start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed .... Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority

are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

Clearly the words "sue and be sued" in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings.

*Id.* at 245, 60 S.Ct. at 490 (footnote omitted). See also *Kosak v. United States*, —— U.S. ——, —— n. 9, 104 S.Ct. 1519, 1523 n. 9, 79 L.Ed.2d 860 (1984) (" 'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.' ") (quoting *Anderson v. Hayes Constr. Co.*, 243 N.Y. 140, 147, 153 N.E. 28, 29–30 (1926) (Cardozo, J.)).

In *May Department Stores Co. v. Williamson*, 549 F.2d 1147, 1148 (8th Cir. 1977), we followed *Burr* and held that, in enacting § 401(1), Congress waived the Postal Service's immunity from state garnishment proceedings. Thus, the cases relied upon by the Court today for the general proposition that prejudgment interest is not available in Title VII actions against the government are not in point, because none of those cases involved a Title VII suit against an agency empowered to "sue and be sued." *Accord, White v. Bloomberg*, 501 F.2d 1379, 1385–86 (4th Cir.1974) (holding Postal Service subject to award of postjudgment interest in suit brought under the Back Pay Act); see also *Richerson v. Jones*, 551 F.2d 918, 925–26 n. 11 (3d Cir.1977).[1]

The question here is not whether "Congress has ... expressed an affirmative in-

---

1. The Court notes, *ante* at 1329 n. 2, that there is authority suggesting that "interest on claims

against the United States cannot be recovered in the absence of an express provision to the con-

**1332**

tention to allow interest." *Ante* at 1329 (footnote omitted). Rather, it is whether Congress has expressed an affirmative intention to restrict the Postal Service's general amenability to suit and all the normal incidents thereof so as to bar awards of prejudgment interest. The Court makes much of the fact that, in enacting the Postal Reorganization Act, Congress did not extend the provisions of Title VII, then inapplicable to federal employees, to postal employees. From this, the Court concludes that Congress intended that postal employees be treated the same as all other federal employees with regard to nondiscrimination laws. I do not believe that this inference is compelled.

First, "[i]n addition to the power to sue and be sued, Congress has assigned a superabundance of power to USPS in making it an 'independent establishment,' operating in a 'business-like' way to make delivery of the mail 'a self-supporting enterprise.'" *Standard Oil Division, American Oil Co. v. Starks*, 528 F.2d 201, 203 (7th Cir.1975) (per curiam). For example, the Service was given a broad range of typical corporate powers, including the power to make and perform contracts; to keep its own system of accounts; to buy, sell, lease, and operate property; to accept gifts; and to compromise claims against it. 39 U.S.C. § 401(3)–(8). The congressional intent is equally manifest with regard to employee relations. Congress directed that Postal Service employees be compensated at a rate comparable to that of employees in the private sector. 39 U.S.C. §§ 101(c), 1003(a). Congress also granted postal employees the right to bargain collectively and made labor-management relations subject, in general, to the National Labor Relations Act. 39 U.S.C. §§ 1201–1209.

Second, when Congress amended Title VII to make it applicable to all federal employees, it intended to accord "[a]ggrieved [federal] employees or applicants ... the full rights available in the courts as are granted to individuals in the private sector under title VII." *Chandler v. Roudebush*, 425 U.S. 840, 841, 96 S.Ct. 1949, 1950, 48 L.Ed.2d 416 (1976) (quoting S.Rep. No. 415, 92d Cong., 1st Sess. 16 (1971)). Title VII contains no language limiting the relief available to federal employees; limits on prejudgment interest have been imposed solely because of the barrier of sovereign immunity—a barrier deliberately lifted by Congress when it created the Postal Service.

In sum, I agree with the decision in *Milner v. Bolger*, 546 F.Supp. 375 (E.D.Cal. 1982). I do not believe that the mere fact that, in 1970, Congress declined to apply Title VII only to federal employees who work for the Postal Service should be used to frustrate Congress's evident intent in 1972 to accord employees of the Postal Service, an independent federal establishment closely resembling a private business enterprise, the same rights accorded employees of private businesses. Accordingly, I respectfully dissent.

## ORDER

Before HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, and BOWMAN, Circuit Judges, en banc.

This case has been considered by the Court en banc.[*] Judges Heaney, Arnold, John R. Gibson, and Fagg would reverse the panel opinion and reverse the district court judgment. Judges Bright, Ross, McMillian, and Bowman would affirm the panel opinion and affirm the district court judgment. Therefore the judgment of the district court is affirmed by an equally divided Court.

---

trary in the relevant statute or contract." *United States v. Alcea Band of Tillamooks*, 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738 (1951) (per curiam). Nevertheless, the Supreme Court has held that where the government enters the realm of private enterprise and consents to be sued, prejudgment interest is recoverable as an ordinary incident of suit. *Standard Oil Co. v. United States*, 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519 (1925). While the Postal Service is not technically a government corporation, it is similar enough to a private business endeavor to

come within the holding of *Burr, May Department Stores Co., supra,* and I see no reason why it should not be subject to the rule of *Standard Oil* as well. *Accord, White v. Bloomberg, supra.* See also *Bituminous Casualty Corp. v. Lynn*, 503 F.2d 636, 643–46 (6th Cir.1974). But see *Riverview Packing Co. v. Reconstruction Fin. Corp.*, 207 F.2d 361, 370 (3d Cir.1953).

[*] Chief Judge Donald P. Lay did not participate in the vote on this case.