**Joan Carol NAGY, Plaintiff-Appellee,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellant.**

No. 84–5583.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1985.

Stanley Marcus, U.S. Atty., Miami, Alan I. Mishael, David O. Leiwant, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., John C. Oldenburg, Office of Labor, U.S. Postal Service, Memphis, Tenn., Kevin B. Rachel, U.S. Postal Service, Washington, D.C., for defendant-appellant.

Richard J. Burton, Ann Mason Parker, Miami, Fla., for plaintiff-appellee.

Before HILL and ANDERSON, Circuit Judges, and GARZA [*], Senior Circuit Judge.

GARZA, Senior Circuit Judge:

This case presents a single issue: whether the United States Postal Service ("Postal Service") is liable for interest on backpay disbursed pursuant to a claim under Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–16. For the reasons outlined below, we hold that the Postal Service is liable for interest under those circumstances.

I

The relevant facts can be stated very briefly. Joan Carol Nagy, a white female, was terminated by the Postal Service in late March of 1974. Nagy utilized administrative channels in an attempt to prove that her termination resulted from discrimination against her on the basis of her sex. In May of 1979, a factfinding hearing was held before an Equal Employment Opportunity Commission examiner. The examiner found Nagy's case meritorious and recommended that she be reinstated. It also recommended that she receive backpay from the date of her termination through September 21, 1977, the date on which she had earlier been offered reinstatement.

In late 1979, pursuant to the examiner's recommendation, Nagy was indeed reinstated. Nonetheless, she filed suit in early 1980 in the United States District Court for the Southern District of Florida, maintaining that she was entitled to backpay up to the actual date of her reinstatement in 1979. This argument was premised on the fact that the 1977 offer of reinstatement had been conditional and therefore did not serve to limit the Postal Service's liability for backpay. Prior to trial, the Postal Service agreed with Nagy on this point, and a settlement was reached in August of 1981. The settlement agreement expressly reserved for submission to the district court the issue of interest on the backpay due Nagy. The district court found the interest recoverable on these facts. This appeal followed.

II

There is no question that an interest award would be proper under Title VII on these facts if the defendant involved were a purely private party. *Pettway v. Ameri-*

[*] Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-tion.

*can Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir.1974). Similarly, those courts of appeals that have considered the question have uniformly held that interest is not recoverable under Title VII against a federal defendant. *Saunders v. Claytor*, 629 F.2d 596 (9th Cir.1980), *cert. denied*, 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981); *Blake v. Califano*, 626 F.2d 891 (D.C.Cir.1980); *DeWeever v. United States*, 618 F.2d 685 (10th Cir.1980); *Fischer v. Adams*, 572 F.2d 406 (1st Cir.1978); *Richerson v. Jones*, 551 F.2d 918 (3d Cir.1977). The rationale of these cases is that the sovereign immunity of the United States shields it from paying interest absent its plain consent; the provision for "any other equitable relief" in Section 706(g), 42 U.S.C. Section 2000e–5(g), which Section 717(d), 42 U.S.C. Section 2000e–16(d), incorporates by reference, has been found insufficiently plain to constitute a waiver of the United States' sovereign immunity.[1]

In this scheme, the Postal Service defies facile categorization. It is somewhat in the nature of a federal defendant in that it is specifically referred to in the 1972 amendments to Title VII, now embodied in Section 717, 42 U.S.C. Section 2000e–16, that deal with federal employers. It is also somewhat similar to a private defendant in that, since the Postal Reorganization Act of 1970, 39 U.S.C. Sections 101 *et seq.*, the Postal Service operates, in many respects, very much like a private business. In tune with that *modus operandi*, the Act grants the Postal Service the power to "sue and be sued." 39 U.S.C. Section 401(1).

 Our ability to decide this case, however, does not depend on our ability to label the Postal Service as either federal for all purposes or private for all purposes. Section 717 clearly contemplates that the Postal Service will be treated as a federal employer in the areas specifically covered in that provision, which explicitly includes the Postal Service within its scope. It is also clear that Section 717 is the exclusive remedy for a Postal Service employee alleging illegal discrimination. *Brown v. G.S.A.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Newbold v. United States Postal Service*, 614 F.2d 46 (5th Cir.), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980). It does not follow, however, that the remedies available to postal employees will necessarily mirror those available to federal employees generally. Federal agencies are shrouded with sovereign immunity, which is waived only to the limited extent articulated in Section 717. The Postal Service, on the other hand, is covered by a "sue and be sued" clause, which creates a presumption of waiver of sovereign immunity for all purposes. *See Franchise Tax Board of California v. United States Postal Service*, — U.S. —, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984); *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). It is therefore clear that, even assuming *arguendo* that "any other equitable relief" does not contemplate the recovery of interest when construed vis-a-vis a Section 717 defendant *enjoying* presumptive sovereign immunity, it may well be that "any other equitable relief" does provide for interest against a Section 717 defendant that has presumptively *waived* its sovereign immunity. In other words, the differing status of the two types of defendants with respect to sovereign immunity may influence the proper construction of the identical statutory language.[2]

 Whatever the proper effect of the language "any other equitable relief" in the case of a federal defendant that enjoys broad sovereign immunity, we hold that the

---

**1.** In view of our manner of disposing of this case, it is unnecessary for us to reach this question. We therefore express no opinion as to the correctness of these cases.

**2.** In *Cross v. United States Postal Service*, 733 F.2d 1327, 1329 (8th Cir.1984), *aff'd en banc by an equally divided court*, 733 F.2d 1332 (8th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1750, 84 L.Ed.2d 815 (1985), the Eighth Circuit

eschewed this analysis. The court held that a waiver of sovereign immunity with respect to interest must be found, if at all, in the statute that creates the cause of action. Under that view, a general waiver of sovereign immunity, such as Section 401(1), would have no effect on the analysis of this issue. We find the dissent in *Cross* more persuasive and respectfully decline to follow the majority's opinion. We might point out that the panel opinion in *Cross* was

language does authorize the collection of interest on a Title VII backpay award from an entity, such as the Postal Service, that has generally waived its sovereign immunity. Under the *Federal Housing Administration v. Burr, supra,* a "sue and be sued" clause creates a presumption of waiver of sovereign immunity that can be rebutted in a particular case only on a showing that a finding of waiver would either (1) be inconsistent with the statutory scheme; or (2) gravely interfere with a governmental function; or (3) be inconsistent with the plain purpose of Congress to use "sue and be sued" in a narrow sense. 309 U.S. at 245, 60 S.Ct. at 490. We agree with the reasoning of the court in *Milner v. Bolger,* 546 F.Supp. 375 (E.D.Cal.1982), that the first two exceptions under *Burr* to a general waiver are plainly not implicated on these facts.

The third exception presents a slightly closer question. The Postal Service argues that in including it in the 1972 amendments to Title VII, Congress demonstrated an intent to construe the "sue and be sued" clause narrowly, in effect, to repeal partially the general waiver created by Section 401(1). The difficulty with this argument is that the Postal Service has not shown this to be the *plain* purpose of Congress. The unequivocal teaching of *Burr* is that a limitation on a general waiver of sovereign immunity will not be readily inferred. We find no plain purpose in the 1972 amendments to Title VII to limit the general waiver of sovereign immunity in Section 401(1). The Postal Service argument that Congress' inclusion of Postal employees in the federal sector of Title VII indicated a congressional intent that Postal employees get the same remedies as federal employees is rejected. Title VII contains no language limiting the relief available to federal employees. The limits on prejudgment interest have been imposed solely because of the barrier of sovereign immunity—a barrier deliberately lifted by Congress when it created the Postal Service. (See dissent of Judge Arnold in *Cross v. United*

*States Postal Service,* 733 F.2d 1327 at 1332.) Accordingly, the general waiver authorizes suit against the Postal Service for interest on backpay.

### III

In conclusion, as the Postal Service has generally waived its sovereign immunity, it is liable for interest on backpay to the same extent as a purely private litigant. The judgment of the district court must therefore be AFFIRMED.

### IV

The appellee has filed a motion for attorneys fees and costs. This is a matter that can best be handled by the district court below. Upon remand, the district court shall first decide whether the appellee is entitled to attorneys fees and if so, the reasonable amount thereof. The costs of this appeal are to be taxed against appellants.

AFFIRMED and REMANDED on the issue of attorneys fees and the amount thereof if granted.

---

vacated when the case went en banc and that the Eighth Circuit en banc opinion, affirming the district court by an equally divided court, has no precedential value. Thus, our opinion does not create a split between the Eighth Circuit and ours.