Theodore J. LOEFFLER, Appellee,

v.

Paul N. CARLIN, Postmaster General, United States Postal Service, Appellant.

Theodore J. LOEFFLER, Appellant,

v.

Paul N. CARLIN, Postmaster General, United States Postal Service, Appellee.

Nos. 84–2553, 84–2574.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1985.

Decided Dec. 30, 1985.

David G. Karro, Washington, D.C., for appellant.

Lisa S. Van Amburg, St. Louis, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Theodore J. Loeffler sued the Postmaster General of the United States Postal Service (USPS) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, for discriminatory discharge on the basis of his sex. The District Court[1] found that plaintiff had established a prima facie case of sex discrimination and had proved by a preponderance of the evidence that defendant's articulated reason for the discharge was mere pretext. Finding that Loeffler was entitled to reinstatement to his former position without loss of seniority, the District Court award-

ed him full back pay and benefits reduced by the amount of interim earnings from other employment, but denied prejudgment interest on the monetary award. USPS appeals, challenging the sufficiency of the evidence supporting the finding of unlawful discrimination. Loeffler cross-appeals the denial of prejudgment interest on the monetary award. We affirm the judgment of the District Court.

## I.

Plaintiff Loeffler, a male rural carrier, had been employed by USPS in Chesterfield, Missouri, for approximately ten years. There were four other full-time rural carriers in the Chesterfield post office, two of whom were female. Loeffler's discharge occurred as a result of his method of organizing "boxholder" mail prior to beginning his delivery route. Boxholder mail is third-class mail not bearing the name and address of postal patrons, but which is designated for delivery to the current resident or occupant at each rural mailbox. Prior to August 1979, rural carriers were permitted to "case" their boxholder mail if they wished to do so. "Casing" is a practice whereby the carrier inserts boxholder mail in each separation of his or her delivery case before leaving the post office work area to begin delivering the day's mail. Each separation in the delivery case contains the mail destined for a particular rural mailbox. The alternative to casing is to leave the boxholder mail in bundles and to collate it with each postal patron's other mail at the point of delivery, *i.e.*, at each individual mailbox. All the rural mail carriers preferred casing boxholder mail, believing it to be the most efficient, safe, and convenient method of delivery. A prohibition against the casing of boxholder mail was implemented in August 1979 by USPS headquarters in Washington. Re-

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

gional offices were directed to relay the instructions to local offices.[2]

The rule against casing was violated openly by Loeffler and the two female carriers. The other carriers complied with the rule and were not involved in any disciplinary action. Each of the rural carriers received approximately the same amount of boxholder mail, and violations of the rule by any of the carriers could be observed with equal opportunity by the supervisors. Loeffler and the two female carriers, Cathy Selz and Julie Wachter, committed violations with roughly the same frequency, and made no attempts to conceal their actions, which in all cases were performed in plain view of their supervisors.

Loeffler was caught violating the rule on four occasions, for which he received a seven-day suspension, two fourteen-day suspensions, and finally a letter of dismissal followed by a decision letter giving the effective date of the discharge. Selz was caught casing on at least three occasions, for which she received a letter of warning, a seven-day suspension, and a threat of dismissal (upon which no action was taken when she was again observed casing). Wachter was observed violating the rule on numerous occasions; she received a verbal warning but no other form of discipline.

Loeffler filed an appeal of his discharge with the Merit Systems Protection Board (MSPB). After a hearing, the presiding official of the MSPB issued a decision affirming the discharge. Loeffler then filed an appeal with the Equal Employment Opportunity Commission (EEOC). The EEOC affirmed the MSPB findings.

Loeffler subsequently filed the present suit under Title VII in the District Court. Following a bench trial, the District Court found that Loeffler had established a prima facie case of disparate treatment based on sex. USPS introduced testimony that Loeffler's admittedly harsher and more frequent punishment and ultimate discharge resulted from the fact that he was observed violating the anti-casing rule more frequently. Making credibility determina-

tions to resolve conflicting testimony, the court concluded that Loeffler had carried the burden of rebutting the defendant's articulated nondiscriminatory reason for the discharge. The evidence included a demonstration of the high visibility of "cased" boxholder mail, the ample opportunities for the supervisors to observe violations of the rule against casing, the paternalistic attitude of one of the supervisors toward employee Selz, and the flagrancy of the violations by both Loeffler and the two female carriers, all of whom violated the rule at every opportunity. The preponderance of the evidence, as credited by the trial court, established that Loeffler was discharged for the same offense committed by two similarly situated women; that one of the women (Wachter) was not disciplined at all; that the other woman (Selz) received lesser penalties than those imposed upon Loeffler; and that USPS's asserted justification for the disparate treatment accorded to Loeffler was pretextual.

## II.

USPS contends that the District Court did not make the necessary finding that Loeffler was subjected to discriminatory treatment because of his sex, and argues further that the record will not support such a finding. We cannot agree with either contention.

■ The first argument is without merit. The District Court's memorandum opinion and the trial record make ample reference to Loeffler's sex as being the basis of the discriminatory treatment to which his supervisors subjected him. The court specifically found that the rule against casing was violated consistently by Loeffler and the two female carriers, and that their violations were so blatant that the rule became a joke. The court also found that in contrast to Loeffler, the two female carriers were either lightly disciplined or not disciplined at all for their violations of the casing rule, although each continued to

---

**2.** The rule against the casing of boxholder mail was enforced until March 1980, when once again the method of delivery was left to the discretion of the carrier.

case her boxholder mail and was observed by her superiors to be committing violations. A supervisor on at least one occasion jokingly commented to Wachter about her violations and took no disciplinary action. The court specifically found that Loeffler and the two female carriers all committed violations with roughly the same frequency, but that the two female employees were either not charged with violating the rule against casing or were administered substantially less discipline than Loeffler, notwithstanding their continued violations. The court further found that at least one of the supervisors was aware of the frequent violations by the women but intentionally overlooked them. In its conclusions of law, the District Court noted that while USPS had the right to discharge or otherwise discipline employees who refused to follow the rules, the method of discipline chosen must be applied equally to all violators, and that some violators may not be protected merely because of their gender. In view of these findings of fact and conclusions of law, it is plain that the District Court's judgment in favor of Loeffler on his Title VII claim is premised on the court's determination that Loeffler was the victim of impermissible gender-based discrimination.

As to the sufficiency of the evidence, USPS argues that the record does not show that Loeffler and the two female employees were similarly situated, since only Loeffler had a prior disciplinary record and was clearly insubordinate to his supervisors. It argues further that this continuing problem of insubordination was an alternative nondiscriminatory explanation for the discharge which was not considered by the District Court.

■ We reject this argument. The nondiscriminatory reason that USPS articulated before the District Court was that Loeffler was the only person caught at such frequent violations, not that he was discharged for open defiance of his superiors and for his prior disciplinary record. New nondiscriminatory reasons for plaintiff's discharge may not be articulated for the first time on appeal.

■ Thus the narrow question remaining is whether the record supports the District Court's finding that Loeffler was improperly discriminated against on the basis of his sex. The District Court, applying the well-established standards set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), found that Loeffler had established a prima facie case of discriminatory discharge by showing that all the rural carriers were opposed to the "no casing" rule, that Loeffler and the two female carriers violated it openly at every opportunity, that management had equal opportunity to observe all violations of the rule, and finally, that Loeffler was ultimately discharged for his actions while neither of the two female employees received discipline of comparable severity, despite their admitted violations. While the defendant was able to articulate a legitimate, nondiscriminatory reason for the disparity in treatment—that plaintiff's harsher treatment and discharge resulted from the fact that he was the only carrier caught frequently in the act of violating the rule and that punishment was meted out according to the number of violations observed—the trial court found that Loeffler had demonstrated that the articulated reason was mere pretext. In *Tate v. Weyerhaeuser Co.*, 723 F.2d 598 (8th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984), this Court stated that a plaintiff may show that the employer's proffered reason for discharge was not the real reason "by 'persuading the court that a discriminatory reason more likely motivated the employer' or by 'showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 603 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). Stated otherwise, "the district court must decide which party's explanation of the employer's motivation it believes." *United States Postal Service Board of*

*Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983). The District Court found that Loeffler's explanation was more credible and that he had established that his discharge was in violation of Title VII.

■ A district court's finding of discriminatory intent under the *Green-Burdine* standard "is a factual finding that may be overturned on appeal only if it is clearly erroneous." *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1508, 84 L.Ed.2d 518 (1985) (citing *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ). The Supreme Court in *Anderson* stated that the basic principle governing appellate review of a district court's finding of discrimination is that " 'a finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) ). When the finding of discriminatory intent is based on the trial court's assessment of the credibility of the witnesses, appellate courts must give even greater deference to the trial court's finding, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson,* 105 S.Ct. at 1512. *See King v. Yellow Freight System,* 523 F.2d 879, 882 n. 7 (8th Cir.1975).

In the present case, the District Court's decision ultimately turned on its assessment of the credibility of the witnesses. Viewing the record as a whole, and giving appropriate deference to the District Court's credibility determinations, we conclude that neither the ultimate finding that Loeffler's discharge was an act of discrimination based on his sex, nor any of the court's subsidiary findings, is clearly erroneous. Accordingly, the judgment in favor of Loeffler on his Title VII claim must be affirmed.

### III.

■ Loeffler contends that the District Court erred in denying prejudgment interest on his back pay award.

In *Cross v. United States Postal Service,* 733 F.2d 1327 (8th Cir.), *aff'd en banc by an equally divided court,* 733 F.2d 1332 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1750, 84 L.Ed.2d 815 (1985), this Court first considered whether prejudgment interest should be available in Title VII actions against USPS. The panel opinion of this Court, which affirmed the district court's denial of prejudgment interest, was automatically vacated when the case went en banc. Our en banc order, however, affirmed, without opinion and by an equally divided court, the judgment of the district court denying prejudgment interest.

Loeffler relies here principally on *Franchise Tax Board v. United States Postal Service,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), a case decided by the Supreme Court after our panel decision but before our en banc decision in *Cross.* At the time of our en banc decision in *Cross,* we considered the implications of *Franchise Tax Board,* which held that USPS is not immune from a state administrative process seeking to garnish the wages of its employees. That case did not address the issue of whether USPS is liable for prejudgment interest in a Title VII case. Thus, despite broad language in the Court's opinion equating USPS with private employers, *Franchise Tax Board* did not decide the question presented here.

■ In denying Loeffler's claim for prejudgment interest, the District Court relied on our en banc affirmance of the trial court's denial of prejudgment interest in *Cross.* We believe that this reliance is both understandable and proper, for Judge Wangelin, the District Judge in the present case, was also the District Judge in *Cross.* Although it may be true that our en banc order in *Cross* has little precedential value, it did affirm Judge Wangelin's decision in

that case, and in that sense it established the law for our circuit. We therefore believe that it would be inappropriate for our panel to do otherwise than to conclude that in the present case Judge Wangelin correctly relied upon *Cross*. If the question of prejudgment interest is to be reconsidered, it should be reconsidered by the Court en banc, not by a three-judge panel.[3] Accordingly, we affirm the District Court's denial of Loeffler's request for prejudgment interest.

## IV.

For the reasons stated above, we affirm the judgment of the District Court in favor of Loeffler on his Title VII claim, and we also affirm the judgment of the District Court denying Loeffler's claim for prejudgment interest.

---

**3.** We note that on October 21, 1985 the Eleventh Circuit became the first circuit to hold the USPS liable for prejudgment interest in a Title VII case. *See Nagy v. United States Postal Service,* 773 F.2d 1190 (11th Cir.1985). The decision rejects the position taken by our panel opinion in *Cross* that the 1972 amendments to Title VII, which extended Title VII to federal employers, including specifically the USPS, do not give USPS employees any greater rights than those given to employees of other federal employers covered by those amendments. If *Cross* can be said to represent the law of our circuit, then there is now a split between our circuit and the Eleventh Circuit.