**Bohdan MAKSYMCHUK,**
**Plaintiff–Appellant,**

v.

**Anthony M. FRANK, Postmaster General; Peter L. Garwood, General Manager, EEOC Appeals Division; US Postal Service, Defendants–Appellees.**

No. 91–1257.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1992.

Decided Feb. 26, 1993.

---

Alice L. Bodley, Martin, Bodley & Kraft, P.C., Washington, DC, argued (Anton G. Hajjar, O'Donnell, Schwartz & Anderson, Barbara Kraft, Joseph Slater, Washington, DC, on brief), for plaintiff-appellant.

Alice Lucille Covington, Office of Labor Law, U.S. Postal Service, Washington, DC, argued (R. Andrew German, Asst. Gen. Counsel, Office of Labor Law, U.S. Postal Service, Washington, DC, Richard D. Bennett, U.S. Atty., Jeanette Plante, Asst. U.S. Atty., Baltimore, MD, on brief), for defendants-appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and MURNAGHAN, Circuit Judges.

## OPINION

MURNAGHAN, Circuit Judge:

Bohdan Maksymchuk, an employee of the United States Postal Service (USPS), obtained on December 26, 1982 a ruling from the Equal Employment Opportunity Commission (EEOC) that the USPS had discriminated against him. Reinstatement was ordered, together with full back pay and credit for all leave. Some substantial delay took place before the USPS in 1985 offered Maksymchuk reinstatement. The USPS also provided for back pay, as it had calculated it, as well as 264 hours of annual leave. The annual leave was computed applying a cap of 240 hours annual leave. Maksymchuk was also credited with 24 hours for the partial year 1985 in which reinstatement took place up to the time of reinstatement.

Maksymchuk was dissatisfied in two respects. He felt that (1) the back pay award should include prejudgment interest, and (2) the calculation of accrued annual leave should not be limited by a cap of 240 hours. Maksymchuk, on May 28, 1986, filed in the United States District Court for the District of Maryland a complaint seeking enforcement of the EEOC order in a manner consistent with his contentions.

On December 7, 1988, the district court had the clerk enter an order enforcing the EEOC order as the court interpreted it. The district judge provided that the cap of 240 hours of accrued annual leave should apply and further concluded that Maksymchuk should not receive prejudgment interest on the back pay award.

Maksymchuk filed a timely motion for reconsideration. On April 24, 1989, the district court ordered denial of the motion for reconsideration. However, it appears that the order so denying the motion for reconsideration was somehow mislaid. Maksymchuk wrote in July and August 1991 to the district judge, asking why nothing apparently had happened. The district judge in a letter of September 17, 1991 to Maksymchuk stated that the denial order had been filed on April 24, 1989 and that copies of the order had been sent to the attorneys of record. It appears that the district judge proceeded on the assumption that what was uniformly the practice would have been the case here. However, Maksymchuk provided proof that the denial of reconsideration order had not been filed (*i.e.*, entered on the docket) and that he and the counsel in the case, contrary to what the district judge's assumption had been, had never received the denial order nor was notice thereof given. He filed an appeal on November 4, 1991.

██ In the usual case, the time for appeal would be 30 or 60 days from the date of entry of the judgment or order. Under Federal Rule of Appellate Procedure (FRAP) 4(a), it is clear that failure to file a timely appeal leaves an appellate court without jurisdiction to consider the merits. *See, e.g., Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). The date of November 4, 1991 was considerably more than 60 days after April 24, 1989. Yet, while the order denying the motion for reconsideration was dated April 24, 1989, it would appear that the statement that the filing had then occurred was not correct, or, at least, that entry of the order had not then taken place. The docket entry appearing next to the April 24, 1989 date states that the original was missing and that a signed copy of the denial order actually was entered by the clerk on December 3, 1991. Maksymchuk, upon learning the fact that the order had been signed, wasted no time.[1] He did not bother to make a motion for extension of time to appeal. Instead, he promptly proceeded to file the appeal.

---

1. Rule 79 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) requires that the clerk enter in the civil docket all papers filed with the clerk. Such entry shall show the date the entry is made. Rule 58 of the Fed.R.Civ.P. calls upon the district court clerk to prepare, sign, and enter a decision by the court.

The first question that we have to address is one of whether we have jurisdiction to consider the appeal. While the USPS has accepted that jurisdiction was present, of course, one may not simply by agreement create jurisdiction where it otherwise does not exist. *See Osborn v. United States*, 50 F.2d 712, 713 (4th Cir.1931) (Jurisdictional requirements "cannot be avoided by consent, acquiescence, or waiver of the parties, or even by an order of the court. It is the duty of a federal appellate court in every case to examine its jurisdiction, whether such point has been raised or not."). Federal Rule of Appellate Procedure 4(a)(6) (effective December 1, 1991) allows filing of an appeal to be extended beyond the 60 days normally applicable when the intended appellee, for example, the USPS, is regarded as part of the government. If Rule 4(a)(6), in view of its recent effective date, even applies, however, the extension of that 60–day period apparently would not be of assistance to Maksymchuk if the date of entry of the judgment or order was in fact April 24, 1989. The extension would expire 180 days from that date.

However, it appears that entry of the order denying reconsideration actually only occurred on December 3, 1991. The appeal was filed on November 4, 1991, and was, therefore, timely. Fed.R.App.P. 4(a)(2) ("[A] notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof.").

The provisions of Rule 4(a)(6), even if they were applicable here, have no relevance. Maksymchuk complied with the terms of Federal Rule of Appellate Procedure 4(a)(1) by filing an appeal on November 4, 1991, within 60 days of the September 17, 1991 letter from the district judge, and actually a month before the denial order was in fact entered. The date of *entry*, *i.e.*, December 3, 1991, was what controlled, not the date of *notice* of entry of a filing order which had already been entered in the docket. (None had been entered here.)[2] *See Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 688 (4th Cir.1978).

The difference in treatment of "entry" on the one hand and "notice of filing" on the other reflects that genuinely alert counsel, while completely stymied if no order has been entered, can, without notice, periodically examine the docket to secure information which has been *entered* even though the party or counsel has not been notified. *See Hensley v. Chesapeake & O. Ry.*, 651 F.2d 226, 229–31 (4th Cir.1981) (counsel have a duty to inquire about the status of their cases, and the mere failure to receive notice of an entry of an order is,

2. *Nunc pro tunc* "means literally 'Now for then.'" 67 C.J.S. at 1 (1978). It "is a procedure whereby a determination previously made, but for some reason improperly entered or expressed, may be corrected and entered as of the original time when it should have been, or when there has been an omission to enter it at all." *Id.* at 2. However, "[e]ntering a decree *nunc pro tunc*, and thereby restricting the time for appeal, is not prejudicial error, *where the defeated party succeeds in perfecting his appeal.*" 2 Bouvier's Law Dictionary 2385 (emphasis added). Relating back here, concerning not the substance of the order made but merely its dating would clearly have a prejudicial effect on Maksymchuk. "*Nunc pro tunc* merely describes inherent power of court to make its records speak the truth, *i.e.*, to correct record at later date to reflect what actually occurred at trial." Black's Law Dictionary 1069 (6th Ed.1990). Here the order limiting annual leave and denying prejudgment interest actually occurred April 24, 1989. The entry thereof, however, did not,

and to say it did would not be to speak the truth. That would unfairly prejudice one of the parties. In fact, the "now" (*nunc*) was December 3, 1991, when entry of the order first occurred; the "then" (*tunc*) was April 24, 1989, the date of the order itself. *See In re Hurley Mercantile Co.*, 56 F.2d 1023, 1025 (5th Cir. 1932), *cert. denied*, 286 U.S. 555, 52 S.Ct. 580, 76 L.Ed. 1290 (1932); 4A C.J.S. *Appeal and Error* § 445, at 114 (1957) ("While the date of the judgment, order, or decree, as shown by the record, governs until corrected by proper proceeding, the commencement of the period cannot be made, by antedating the entry of an order or decree, or the signature thereof, to run from the date when such entry or signature purportedly was made rather than of the true date thereof; and when the rights of parties with respect to an appeal are determined by such date, they cannot be defeated or affected by the fact that the entry or signature is made expressly nunc pro tunc as of the prior date.").

by itself, insufficient to extend the time for appeal). Accordingly, we have jurisdiction to address on the merits Maksymchuk's claim to an increased award of annual leave over the amount calculated by the USPS and to prejudgment interest.

■ The answer to the question concerning the amount of annual leave to which Maksymchuk is entitled turns on the proper interpretation of the EEOC order whose enforcement Maksymchuk has sought. Maksymchuk was, by the EEOC decision, entitled to "all sick, annual and any other leave entitlements which he would have earned had he been employed during the period beginning on the effective date of his retirement and ending on the date … of reinstatement." The Postal Reorganization Act, 39 U.S.C. §§ 101 ff., does not constrain the USPS in working out provisions governing annual leave for its employees. The USPS is granted broad authority to manage its operations, including the power to fix wages and other terms of employment. *See* 39 U.S.C. §§ 101, 1003. A right to bargain with postal workers with respect to wages under the Act is dealt with in 39 U.S.C. §§ 1004, 1203, and 1209. By collective bargaining, the 240–hour cap to annual leave was agreed to. The district court was correct in interpreting the EEOC opinion as intending that the 240–hour cap should apply to annual leave.

That result is buttressed by the consideration that remedial awards under Title VII are to make the injured parties whole, not to provide a windfall. *See Smallwood v. United Air Lines*, 728 F.2d 614, 618 n. 7 (4th Cir.1984), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984).

■ Turning to the back pay prejudgment interest question, we find that a remand is necessary. The EEOC, in Maksymchuk's case, did not resolve the question of prejudgment interest by explicitly stating that its award of back pay was "without" interest. The EEOC had ruled: "In order to remedy its past discrimination against appellant, the agency shall … [a]ward to appellant backpay … including … all pay adjustments." The order could have intended an award "with" or "without" interest. While there were arguments made that the USPS enjoyed sovereign immunity and had never consented to being sued for interest, nevertheless, that contention was exploded by the decision in *Loeffler v. Frank*, 486 U.S. 549, 556, 558, 108 S.Ct. 1965, 1969, 1971, 100 L.Ed.2d 549 (1988) ("Title VII authorizes interest awards as a normal incident…. Congress is presumed to have waived any otherwise existing immunity of the Postal Service from interest awards.").[3] Although the 1988 opinion in *Loeffler* is subsequent to the 1982 EEOC decision, *Loeffler* indicates that the Postal Reorganization Act in *1970* removed the mantle of sovereign immunity for the USPS. *Id.* at 555–56, 108 S.Ct. at 1969–70; *see also Nagy v. United States Postal Serv.*, 773 F.2d 1190, 1192–93 (11th Cir.1985) ("[W]e hold that the language does authorize the collection of interest on a Title VII back pay award from an entity, such as the Postal Service, that has generally waived its sovereign immunity."). A postjudgment interest award against the USPS also is not barred by sovereign immunity because of the broad waiver of sovereign immunity under the Postal Reorganization Act.[4]

---

**3.** *See also Franchise Tax Bd. v. United States Postal Serv.*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984).

**4.** *Chisholm v. United States Postal Serv.*, 516 F.Supp. 810, 881 (W.D.N.C.1980), *aff'd in part, vacated in part*, 665 F.2d 482 (4th Cir.1981), does not provide authority for the failure to order prejudgment interest against the USPS since, in that case, the district judge was inclined to award prejudgment interest but felt that he was precluded since Title VII did not specifically allow prejudgment interest. That supposed reason, expressed with regret, does

not survive *Loeffler* and *Nagy*. The district judge in *Chisholm* did decide to award postjudgment interest, nevertheless.

With respect to the present case, *Loeffler* establishes that there was no sovereign immunity for the USPS since well before 1982, so a waiver of sovereign immunity by the EEOC was not needed in the present case, having long previously been ended by statute. That does not read the legal principles of *Loeffler* retroactively. It only establishes the correct date when sovereign immunity ceased to be available to the USPS as a defense.

The district court therefore was not, in exercising its discretion, without the authority to award Maksymchuk interest on the back pay award. The award of prejudgment interest would appear to be a matter within the district court's discretion. *See, e.g., United States v. Gregory,* 818 F.2d 1114, 1118 (4th Cir.1987), *cert. denied,* 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987) ("A decision whether to award prejudgment interest as a component of relief is entrusted to the discretion of the district court."); *Domingo v. New England Fish Co.,* 727 F.2d 1429, 1446 (9th Cir.1984), *modified,* 742 F.2d 520 (9th Cir.1984) ("Cases from other circuits have held that an award of prejudgment interest on a backpay award is appropriate.... Such an award, however, is discretionary with the trial court." (citations omitted)).

We therefore remand the case for the district court's discretionary determination as to whether prejudgment interest is appropriate in the instant case. In so doing, we note that there are authorities that would affect the exercise of that discretion. Prejudgment interest is commonly denied when the back pay award is not readily determinable or when the plaintiff fails to raise the issue in a timely or an appropriate manner. *See, e.g., Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 909 (6th Cir.1991) ("The award or denial of pre-judgment interest is within the sound discretion of the trial judge. Because [the plaintiff] did not request any prejudgment interest in her damage calculation, we find no abuse of discretion in this case." (citation omitted)); *Domingo,* 727 F.2d at 1446 ("The fact that the amount of backpay is not readily determinable weighs against awarding prejudgment interest.").

However, the district court's discretion should be exercised bearing in mind the "make-whole" policy of Title VII. *See, e.g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (The "purpose of Title VII ... [is] 'to fashion the most complete relief possible ... to make the victims of unlawful discrimination whole....' " (quoting 118 Cong.Rec. 7168 (1972))); *Pecker v. Heckler,* 801 F.2d 709, 711 (4th Cir.1986) ("We recently stated the standard to be applied by the courts of this circuit in determining what is an appropriate remedy under the [Title VII]: '[O]ur objective is to place plaintiff in a position as near as possible to where she would be had discrimination not occurred.' " (citation omitted)). A dollar tomorrow, unless interest is added, does not equal a dollar today. *See, e.g., Pegues v. Mississippi State Employment Serv.,* 899 F.2d 1449, 1453 (5th Cir.1990) ("Interest is compensation for the use of funds; it is not awarded as a penalty against a defendant. We have stated in this Circuit that under Title VII interest is an item that *'should be* included in back pay' to make a victim whole." (footnotes omitted)); *see also Clarke v. Frank,* 960 F.2d 1146, 1153–54 (2d Cir.1992) ("[W]e have held that 'it is ordinarily an abuse of discretion *not* to include pre-judgment interest in a back-pay award....' " (citation omitted)); *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1372–73 (7th Cir. 1992) ("In more recent cases, we have cabined [the] discretion [of district courts] somewhat. The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations.' " (citation omitted)).

Accordingly, the judgment is

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

WIDENER, Circuit Judge, concurring:

I concur in the result and in all of the opinion down to the beginning of the last paragraph on page 1076, commencing with the words "[t]urning to the back pay prejudgment interest question...."

I do not think it is either appropriate or necessary, and therefore *dicta,* to so channel the discretion of the district judge before he has even exercised it.