Lloyd COOPER, Plaintiff,

v.

PAYCHEX, INC., Defendant.

Civil Action No. 96–54–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 20, 1997.

William D. Hopkins, Ross, Dixon & Masback, Washington, DC, for plaintiff.

Thomas A. Guidoboni, Michaels, Wishner & Bonner, Washington, DC, Timothy D. Speed, and Gregory T. Alvarez, Jackson, Lewis, Schnitzler & Krupman, Morristown, NJ, for defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

This case comes before the Court on Motions by both Defendant Paychex, Inc. ("Paychex") and Plaintiff Lloyd H. Cooper ("Cooper"). On January 30, 1997, following a four-day jury trial in this Court, a jury found for Cooper on his allegations of violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. The jury awarded compensatory damages of $200,272 for back pay and $50,000 for pain and suffering, plus $100,000 in punitive damages. Paychex now comes before this Court seeking to have that judgment set aside and a new trial ordered. Cooper seeks an award of prejudgment and postjudgment interest.

### I.

■ Paychex has filed a Motion to Set Aside the Verdict and/or Order a New Trial. On Motion by an unsuccessful litigant, the law requires this Court to review all the evidence, witnesses, and its own rulings, whether on evidence or jury instructions. The Court will only set aside the verdict pursuant to FRCP 50(b) if it determines that

the verdict, even if supported by substantial evidence, is against the clear weight of the evidence or based on evidence which is false or will result in a miscarriage of justice. *Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 196 (4th Cir.1987) (quotation and citations omitted). Alternatively, a new trial may be ordered pursuant to FRCP 59(a). In interpreting Rule 59(a) of the Federal Rules of Civil Procedure, the Fourth Circuit Court of Appeals has stated that:

> A trial judge has a duty to set aside a verdict and grant a new trial even though it is supported by substantial evidence if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice.

*Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891–92 (4th Cir.1980); *see also Whalen v. Roanoke County Bd. of Supervisors*, 769 F.2d 221, 226 (4th Cir.1985) ("[t]he court should exercise its discretion to grant a new trial 'whenever, in its judgment, this action is required in order to prevent injustice.'") (citation omitted).

In its Motion, Paychex hurls at least sixteen objections against the judicial wall with the hope that at least one will stick and permit the verdict to be set aside or a new trial be granted. Each set of objections will be addressed individually.

## II.

Paychex cites two grounds for a judgment notwithstanding the verdict: (1) that Cooper, as a matter of law, did not demonstrate that Paychex's articulated non-discriminatory reason for the termination was pretextual; and (2) that Cooper did not demonstrate, as a matter of law, that the termination was a function of intentional race discrimination. Like nearly all the grounds asserted in its Motion, these two contentions merely restate the arguments made by Paychex when its moved for a directed verdict and renewed that motion.[1]

■ Paychex is wrong on both counts. Cooper presented ample evidence of pretext. While Paychex insisted the firing was based on Cooper's unavailability and lack of commitment to his job, four sales representatives and his former supervisor, Glen Albert, corroborated Cooper's story that he worked well and was available. Cooper insisted that results, i.e. making quota, mattered more than the strict number of hours worked. The jury heard two sides of the story, with Paychex and Ed Reid ("Reid"), the zone sales manager who fired Cooper, offering one reason for the firing and Cooper offering another. The jury believed Mr. Cooper's and not Mr. Reid's.

■ On the second contention, Paychex misconstrues the holding in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). If the jury does not believe the employer's proffered reason, the law does not require any further evidence from the plaintiff. *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir.1996). Furthermore, Cooper presented ample evidence of Paychex's racial animus, including: Ed Reid's "you people" comment; Tracy Dodd's racial comments; the favorable treatment accorded Keith Holland, a similarly situated white employee; and the data concerning Paychex's workforce. From the evidence, a jury could reasonably infer intentional race discrimination by Paychex.

## III.

As its first four grounds for a new trial, Paychex argues that the Court erred in certain evidentiary rulings. These objections merely reiterate the exact same objections made during the motions in limine.

■ The first contention is that the Court erred in not excluding numerical data of Paychex's workforce. The Court relied on *Estes v. Dick Smith Ford*, 856 F.2d 1097, 1103 (8th Cir.1988) in admitting the evidence. In that case, the court ruled that even though the plaintiff brought an individual disparate

---

1. The Court notes that counsel for Paychex contacted the Court less than 24 hours prior to the time at which argument for these Motions had been scheduled for weeks to inform the Court that Paychex would rest on its papers and not seek any oral argument.

treatment case, data should be admitted. As evidenced by its argument, Paychex still fails to understand that it, Paychex, is the defendant in this case. It insists that the Court erred in admitting company-wide data "over which the alleged discriminator had no control or connection." Paychex apparently believes that Ed Reid, "the alleged discriminator," is the actual defendant. Paychex was and is the defendant, and evidence of its hiring practices, as gauged by its employment statistics, was properly admitted.

■ The second evidentiary ruling Paychex disputes involved the alleged racial bias of Tracy Morris Dodd, Cooper's secretary at Paychex who initiated the complaints against Cooper. In his Complaint, Cooper alleged that Paychex relied, in part, on Tracy Dodd's complaints in order to fire Cooper. In fact, in its motion for summary judgment, Paychex admitted that it relied heavily on statements by Dodd to support its contention that it fired Cooper for nondiscriminatory reasons. Thus, Ms. Dodd's remarks are not "stray." See Ezold v. Wolf, Block, Schorr & Solis–Cohen, 983 F.2d 509, 545 (3d Cir.1992). Paychex cites several cases which exclude the testimony of non-decision makers. In each of those cases, though, the witness did not participate at all in the decision to terminate. See, e.g., Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir.1983) (witness told of discrimination after firing). In this case, however, Dodd appears to have had a significant impact on the decision to fire. Accordingly, her testimony was properly admitted. See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1459 (7th Cir.1994) (testimony of person who participated in firing is admissible, though another made final decision); Estes, 856 F.2d at 1104.

■ The third evidentiary ruling Paychex attacks concerns the finding of probable cause by the Fairfax County Human Rights Commission ("FCHRC"). This challenge was made in a Motion in Limine, and denied based on the directive contained in Chandler v. Roudebush, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 1961 n. 39, 48 L.Ed.2d 416 (1976) and the factors outlined in Ellis v. International Playtex, Inc., 745 F.2d 292, 300–01 (4th Cir.1984). Cooper accurately notes that

every court to address the issue since Chandler has, at a minimum, left it to the discretion of the District Court to determine the admissibility of such a report. See, e.g., Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir.1988). The Fourth Circuit places the burden on Paychex to demonstrate why the Report should not be admitted, and Paychex failed to do so. See Ellis, 745 F.2d at 300–301; see also Distaff, Inc. v. Springfield Contracting Corp., 984 F.2d 108, 111 (4th Cir.1993) (listing additional reasons a report might be inadmissible).

Amazingly, after the Court allowed the FCHRC Report into evidence, Paychex did not seek a limiting instruction for it. Instead, the Court granted a limiting instruction as a final jury instruction at the request of Cooper's counsel.

Paychex also attacks the admissibility of the Report on hearsay grounds. Reports such as this, though, inherently contain hearsay. The Court's job is to weigh the hearsay nature of the report and the lack of cross-examination involved. Johnson v. Yellow Freight Sys., 734 F.2d 1304, 1308–09 (8th Cir.1984). Accordingly, the Court factored those issues into its evaluation, as required by the test present in Ellis, and ruled that the Report was sufficiently reliable. It stands by that decision.

■ As its fourth grounds of challenge to evidentiary rulings, Paychex cites the testimony of Cooper's subordinates. Paychex argues that those employees had no role in the decision to fire, and that their testimony thus was prejudicial. Paychex has an incorrect understanding of the law. St. Mary's Honor Center, 509 U.S. at 506, 113 S.Ct. at 2746, and its progeny do not stand for the proposition that an employer may give any reason for its conduct so long as it subjectively and honestly believes it. It is up to the jury to accept or reject the employer's proffered nondiscriminatory reason, and evidence from nonparty witnesses is particularly important in that determination. The Court has not been presented with a case by Paychex which requires that nondecisionmaking employees be excluded from testifying. In fact, the cases it does cite stand for the opposite

position. *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir.1991) (plaintiff required to put on evidence to demonstrate employer offered pretextual reason); *Smith v. Flax*, 618 F.2d 1062 (4th Cir.1980) (though none eventually supported plaintiff, witnesses permitted to testify). Paychex raised these exact arguments in a Motion in Limine. The Court rejected its arguments then, and does so again now.

## IV.

Paychex next contends that the Court committed four errors in instructing the jury. First, Paychex contends that the Court improperly instructed the jury on the test for discrimination by giving Plaintiff's Instructions 29–31. In fact, however, the Court instructed the jury according to Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions*, § 104.04 (Supp.1996). That instruction accurately reflects the law contained in *St. Mary's Honor Center.*

Paychex also insists that an instruction should have been given to the effect that Cooper would not have been fired "but for" his race. Def's Mot. at 19. In fact, a cursory review of the transcript demonstrates that the instruction given by this Court stated exactly that:

> [T]he plaintiff must prove by a preponderance of the evidence that the defendant intentionally discriminated against him because of his race.... [Y]ou must find for the defendant unless you find ... that it is more likely than not that, except for plaintiff's race, he would have been discharged.... The law is violated if the defendant's actions would not have occurred *'but for'* the plaintiff's race. The plaintiff is not required to prove that race was the sole reason for Paychex's actions; the plaintiff need only prove that *'but for'* his race, his treatment by Paychex would have been different.

January 30 Tr. at 24–26 (emphasis added).

Counsel for Paychex obviously failed to review the transcript prior to lodging this objection based on the absence of a "but for" instruction. Furthermore, in this first objection, Paychex basically contends that the Court should have elaborated on the shifting burdens of production. The Fourth Circuit, however, has directed the district courts to keep jury instructions as simple as possible in order to avoid overwhelming a jury. *Mullen v. Princess Anne Vol. Fire Co., Inc.*, 853 F.2d 1130, 1136–37 (4th Cir.1988).

▇ Paychex further asserts that the Court erred in not ruling that a *prima facie* case requires the plaintiff to prove that he "was qualified for his job and was performing his job at a level which met his employer's legitimate expectations." Def. Mot. at 20. As support for this contention, Paychex cites to ADEA (Age Discrimination in Employment Act) cases within this Circuit, *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 546 (4th Cir.1995) and *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir.1993). In doing so, counsel for Paychex apparently forgets that this case involves Title VII and Section 1981, not ADEA, claims. The law for those claims requires that the Plaintiff establish that he was qualified for his job and his job performance was satisfactory. *See Carter v. Ball*, 33 F.3d 450, 458–59 (4th Cir. 1994); *McNairn v. Sullivan*, 929 F.2d 974, 979 (4th Cir.1991). The Court instructed the jury as to that law; no error existed in the Court instructions regarding the proper burdens of production.

▇ Second, Paychex insists that the Court committed error in not giving a "business judgment rule" instruction to the jury. Paychex cites *Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir.1989) as support for the proposition that a specific "business judgment" instruction must be propounded to the jury. That case clearly does not do that, and, in fact, no case requires such a specific instruction. Instead, *Holder* merely stands for the proposition that there exist "distaste[ful]" employment decisions which are not actionable under Title VII. *Id.* at 825. *Holder*, and similar cases, actually turns on affirmative evidence of nepotism, cronyism, etc. No such evidence existed in this case.

This objection by Paychex actually restates their first objection more specifically. This Court instructed the jury at length that Cooper bore the burden of establishing that Paychex fired him because of his race. The jury

may find the employer's proffered reason to be not credible, and thus not the actual reason for the termination. In this case, it apparently did so after having been properly instructed.

Third, Paychex insists that the Court improperly instructed the jury on Cooper's obligation to mitigate his damages.[2] In effect, this argument reiterates the objection made by Paychex in its motion in limine concerning Cooper's time in law school. The Court instructed the jury as to the mitigation requirement, and, as manifested by its verdict, the jury considered the mitigation instructions very carefully. It reduced the requested backpay award for the last two years, and refused to award any frontpay. The jury instruction properly reflected the governing law. *See Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1274 (4th Cir.1985).

■■■ Fourth, Paychex insists the Court erred in giving a jury instruction on punitive damages. Specifically, counsel for Paychex argues that the conduct of Ed Reid cannot support punitive damages against Paychex. Def. Mot. at 26. Paychex, as a corporation, acts through its officers and directors, and Ed Reid, in this case, acted within the scope of his authority. Accordingly, the instruction was proper.

Counsel for Paychex also misstates the extent to which punitive damages were mentioned in the case. Only a single document referred to the subject (Pl.'s Ex. 55, concerning Paychex's financial condition), and counsel for Cooper only devoted a small portion of his hour-long closing argument to the issue.

Ed Reid's "you people" statement was vigorously contested during the trial, and the jury apparently believed Cooper's version of the conversation. Sufficient evidence of malice existed in this case to support an award of punitive damages. *See Stephens v. South*

*Atl. Canners, Inc.,* 848 F.2d 484, 489–90 (4th Cir.1988).

The Court stands by its jury instructions; none of the objections made to the same justify disturbing the jury's verdict.

## V.

■■■ Paychex contends that the Court improperly restricted the defense during the trial and that it improperly permitted Cooper to put on a rebuttal witness.[3] Paychex contends that the Court "arbitrarily" limited the cross-examination of Cooper and prevented Paychex from "conducting a thorough cross examination."

The record indicates otherwise. After the direct examination, which consumed less than three hours, the Court instructed counsel for Paychex that it had the remainder of the day, up until 5:30 p.m., for cross-examination. The Court, in fact, permitted counsel to continue until 5:40 that day, and then continue into the next day. The Court specifically instructed counsel that it had thirty minutes that morning, and it went over that time limit as well. The total cross-examination of Cooper took five-and-a-half hours and filled 190 pages of transcript. That was, and is, more than sufficient.

■■■ Paychex also contends that the Court improperly limited the direct examination of Jane Hartsock by not permitting questions about complaints about Cooper that Hartsock received from other workers. As Paychex admits, those were hearsay statements. The Court permitted Hartsock to testify as to the hearsay statements which she relayed to Reid; it only prevented Hartsock from testifying as to the statements from employees which she did not divulge.

Paychex contends that the statements should nonetheless have been admitted "to

2. Paychex again inaccurately asserts that the Court adopted the Plaintiff's instruction. In fact, the Court used Devitt & Blackmar § 104.05 for this point.

3. The Court notes that it permitted Darren Hughes ("Hughes") to testify for Paychex though counsel for Paychex failed to list him on the witness list, as required. Paychex questioned

Cooper during his deposition about his job and termination at Eastern Telecom, where Hughes had been his supervisor. Despite the fact that Hughes had not been listed, the Court permitted Paychex to call Hughes to testify as to Cooper's work ethic. In addition, the Court, over Cooper's objections, instructed the jury after, rather than before, closing arguments.

corroborate the basis for Ms. Hartsock's complaints to Ed Reid." Def. Mot. at 23. The Federal Rules, however, do not contain a hearsay exception for "corroboration." If Paychex means that a "state of mind" exception existed, the testimony would still be inadmissible. In this case, Ms. Hartsock was not a decision maker for Paychex. If she had been, like Ed Reid, then those statements could be admitted for the effect they had on the decision-making listener in determining whether to fire Cooper.

Paychex, however, cannot use Hartsock as a sieve through which to leak hearsay statements to the jury. Paychex should have called those other employees as witnesses, as Cooper did, to corroborate their version of events. Their failure to do so rests with their counsel, and not with this Court. Accordingly, no error existed in preventing Ms. Hartsock from answering the questions at issue.

■ Paychex asserts that the Court improperly permitted Cooper to call his brother as a rebuttal witness. Paychex sarcastically asks in its Motion "What, then, was David Cooper called to *rebut?*" Def. Mot. at 24. David Cooper served to rebut the extensive, five-and-a-half hour attack Paychex lodged on his brother's credibility. Paychex, in its attack on Cooper during its extensive cross-examination, offered a significant amount of evidence concerning its story that Cooper intended to attend law school all along. In fact, that story served as the basis for at least one motion in limine as well as its only support for its current Motion to Amend Judgment. Paychex questioned Cooper on numerous aspects of his attending law school, including damages suffered, extent to which he continued his job search, and his reasons for attending.

■ A district court has the discretion to determine whether a rebuttal witness may properly be brought to rebut attacks on a witness' credibility. *See United States v. Tejada*, 956 F.2d 1256, 1267 (2d Cir.1992). Accordingly, David Cooper was a proper witness to bring on rebuttal against that evidence.

## VI.

Paychex also contends that the Court committed error in using the jury verdict form submitted by Cooper. Paychex asserts that the verdict form failed to require the jury to conduct any analysis regarding the applicable burden of proofs.

■ This argument has no merit. The jury was extensively instructed as to the applicable burdens of proof. Paychex has not cited any case, and this Court knows of none, which requires the jury form to capture each and every jury instruction. A jury form is intended to assist the jury in analyzing and presenting its decision. The jury form submitted by Paychex would have failed that goal due to its length and its confusing structure. The verdict form given to the jury was sufficient.

## VII.

■ At the end of its laundry list, Paychex argues that the judgment should be reduced because Cooper failed as a matter of law to mitigate his damages by going to law school. In doing so, Paychex contends that the Court erred in its earlier rulings allowing recovery for backpay during the period Cooper attended law school. Again, this objection is a simple rehash of an earlier motion in limine.

As long as Cooper "exercise[d] reasonable diligence" in searching for full-time work while in school, he was entitled to back pay. *See Brady*, 753 F.2d at 1274. Paychex did not sufficiently rebut Cooper's evidence as to the search. As evidenced by its verdict, which significantly reduced the backpay for the years after the termination, the jury obviously considered Cooper's mitigation efforts.

## VIII.

Most of the grounds Paychex cited for its Motion to Set Aside the Verdict were merely reiterations of its arguments during its Motion for Summary Judgment and its Motions in Limine.[4] The outcome of this case turned

4. The Court notes that Paychex failed to include

an objection in its long list to the pain and

on the credibility of two witnesses, the plaintiff Lloyd Cooper and Mr. Ed Reid, the man who fired him on behalf of the defendant. The jury obviously believed Cooper more than Reid.

In its filings, Paychex sought a stay in these proceedings. The Court does not find any basis for granting a stay under FRCP 62. Furthermore, Paychex has not posted any bond in this case, which would be a requirement of any stay granted.

## IX.

Cooper seeks both prejudgment and postjudgment interest, and the parties have requested that the Court, not the jury, compute the proper interest award.

■■■■■ Remedial awards under Title VII are intended to make the plaintiff whole, but not to provide a windfall. *Maksymchuk v. Frank,* 987 F.2d 1072, 1076–77 (4th Cir.1993) (citations omitted). The awarding of prejudgment interest rests within the discretion of this Court. *Id.* at 1077 (citation omitted). Prejudgment interest is often denied in instances where the back pay award may not be determinable or if plaintiff fails to raise the issue. *Id.* (citations omitted). The basic purpose in awarding prejudgment interest is to correct for the fact that a dollar yesterday was worth more than a dollar today. *Id.* (citations omitted).

In this case, both parties agree that Cooper is entitled to an award of prejudgment interest. *See Loeffler v. Frank,* 486 U.S. 549, 557–58, 108 S.Ct. 1965, 1970–71, 100 L.Ed.2d 549 (1988). The issues for the Court to resolve are: (1) what rate to apply; (2) whether simple or compound interest should be used; (3) whether the interest should be based on the net, i.e. after-tax, or gross award of back pay; and (4) whether interest should accrue for the periods in which Coo-

per attended law school and allegedly delayed litigation.

### 1. Rate to Apply

■■■■ Paychex contends that the Court should apply the Federal Postjudgment Rate in determining the prejudgment interest amount. Cooper insists that the Virginia statutory rate of 9% is appropriate.

Paychex only cites to one case within this District, *Thomas v. County of Fairfax, Va.,* 758 F.Supp. 353, 369 (E.D.Va.1991). Before addressing the merits of their argument, the Court notes that Paychex stated in its papers, "To paraphrase another judge of this Court, '[w]hy the Virginia statutory rate should apply in this [Title VII] case is neither apparent nor suggested by any authority offered.'" Def. Mot. at 2 (quoting *Thomas*). *Thomas* was not a Title VII case, but instead dealt with the Fair Labor Standards Act. The Court will not judge whether Paychex's parisology was inadvertent or the result of interpreting the term "paraphrase" as a license to misconstrue, but Paychex's statement concerning *Thomas* as a Title VII case is clearly misleading.

As to the merits of the issue, the Virginia statutory rate should be applied. The Court in *Thomas,* as well as in both cases cited by Cooper, applied the applicable state statutory rate. *See Quesinberry v. Life Ins., Co.,* 987 F.2d 1017, 1031 (4th Cir.1993); *EEOC v. Liggett & Myers, Inc.,* 690 F.2d 1072, 1074–75 (4th Cir.1982); *Thomas,* 758 F.Supp. at 369. This Court knows of no binding precedent which dictates otherwise. Accordingly, the Virginia statutory rate of 9% will be applied.

### 2. Simple or Compound Interest

■■■■ Paychex asserts that the Fourth Circuit does not permit interest to be compounded. Again, Paychex has stretched the

suffering damages awarded. This omission came despite the Court discussing applicable Fourth Circuit precedent on the issue with counsel for Paychex at the close of the first day of trial. *See Hetzel v. County of Prince William,* 89 F.3d 169, *cert. denied,* —— U.S. ——, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996). Apparently Paychex agrees with this Court's view that the evidence in this case supports the pain and suffer-

ing award under the standards announced in *Hetzel. Id.* at 171–72. In this case, more than one witness testified to the effects the wrongful termination wrought on Cooper. He could not keep his own place to live, lost his car, had to sleep on the couches of friends, borrowed money, could not give his daughter gifts at the holidays, etc. The $50,000 award was definitely not excessive.

holding of a case. In *Quesinberry*, cited by Paychex for its contention, the Fourth Circuit only ruled that post-judgment interest should be compounded. 987 F.2d at 1032 n. 13. The Fourth Circuit merely stated that "We do not disagree ... that prejudgment interest should normally accrue at a simple rate of interest rather than compound. Our conclusion ... does not require compound pre-judgment interest." *Id.* The Fourth Circuit did not rule that compound pre-judgment interest would be improper in all cases. *Id.*

Unfortunately, the Court does not know of a standard by which to gauge which cases deserve compound interest, other than general equitable principles. In one other Circuit to address the issue, the Second Circuit ruled it reversible error to not apply a compound interest rate. *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993).

In this case, common sense and the equities dictate an award of compound interest. For example, if Cooper had received a dollar in 1993, he could have received interest on that amount in 1994, and then interest on both the principal dollar and the interest earned in 1993. Thus, an award of interest on interest, i.e. compound interest, is necessary to make Cooper whole.

The Court further notes that Cooper is willing to accept the more conservative measure of compound interest on an annual, as opposed to a daily or monthly, basis. The Court emphasizes that applying the interest rate only at the end of the year results in a much lower interest award. For example, the procedure used by Cooper resulted in no interest payable at all for calendar year 1993. On the other hand, Paychex, even under its overly limited procedure, would entitle Cooper to $334.55 in interest. Cooper's calculations certainly do not produce a windfall. The Court will adopt Cooper's limited manner of compounding interest.

*3. Interest on Net, i.e. after-tax, or Gross Award*

■ Paychex contends that interest should only be applied to the net back-pay award, i.e. what Cooper would have received in his after-tax paycheck, as opposed to his gross earnings. In *Thomas*, 758 F.Supp. at 360, the Court applied the interest rate to the net award of back pay.

Cooper argues that the equities of the case require interest on the gross award. These equities include (1) the fact that Paychex has essentially received an interest-free loan on the back pay and should not be allowed to reap the benefits from that, *see Saulpaugh*, 4 F.3d at 145; (2) that Cooper, because of the lump-sum nature of the payment, will suffer increased tax liability; (3) that Paychex has not proven the accuracy of its calculations; and (4) that the difficulty in determining the proper tax treatment entitles Cooper to receive interest on the entire award.

Cooper cites to three cases for the proposition that interest should be applied to the gross amount. *Dalal v. Alliant Techsystems, Inc.*, 1995 WL 747442 (10th Cir. Dec.18, 1995) (unreported opinion); *Artis v. United States Indus.*, 822 F.Supp. 510, 511 (N.D.Ill. 1993); *Littlejohn v. Null Mfg. Co.*, 619 F.Supp. 149, 151 (W.D.N.C.1985). Without considering the unreported Tenth Circuit case, this Court believes that interest should be applied to the gross award in this case.

First and foremost, using the net award would effectively provide a benefit to Paychex, which has basically received an interest-free and tax-free loan by not having paid Cooper. In addition, Cooper would be penalized by the lump-sum nature of this award. His award will be taxed in a higher bracket than if he had received the amounts in increments over the years. *See Gelof v. Papineau*, 829 F.2d 452, 455 (3d Cir.1987); *Sears v. Atchison, Topeka & Santa Fe Ry.*, 749 F.2d 1451, 1456 (10th Cir.1984); *Littlejohn*, 619 F.Supp. at 151.

Cooper accurately notes that the tax treatment of the backpay award is not necessarily clear. After the Civil Rights Act of 1991, such backpay awards were taxable, but the Small Business Job Protection Act of 1996 reversed that. However, though taxable, it is unclear whether the award would be subject to withholding. In addition, Paychex did not calculate the net award using any deductions at all. Thus, Paychex has not provided

this Court with an accurate net award to base its calculations on even if it were inclined to apply interest to a net award.

The Court must endeavor to make Cooper whole without providing a windfall. In this case, after applying an interest rate of 9% compounded, the difference in calculating interest based on a net versus a gross amount is approximately $7,000 ($33,415 versus $26,127).[5] This amount should not be considered a windfall. Even if the amount could be so construed, though, it would be better to provide Cooper with a slightly higher award to offset the higher tax liability he faces. Furthermore, Paychex has essentially received an interest-free and tax-free loan in this case, and the Court would rather ensure Cooper a whole recovery than permit Paychex to reap some benefit from its discriminatory conduct. Thus, interest will be applied to the gross amount.

To reiterate, Cooper calculated the interest in an arguably overly conservative way by only applying interest at the end of the year. If this Court were to only apply interest to the net award, Cooper has indicated he will seek, and this Court would be inclined to award, interest compounded on a more aggressive schedule, e.g. bi-weekly, to coincide with the paychecks. That more aggressive computation may actually more accurately serve to make Cooper "whole," but the Court will limit its interest award to that requested by the Plaintiff.

### 4. Periods which Cooper attended law school/alleged delays

■ Paychex asserts that Cooper should not receive interest for the time in which he was in law school or during that period in which he allegedly caused unnecessary delay in litigation. Taking each argument in turn, the latter contention is wholly specious. Cooper filed within the time frame allotted by law. No unnecessary delay existed. Paychex has only cited to one case in which the Second Circuit instructed the district court

on remand to consider the possibility of undue delay. None existed in this case, and interest will be paid for the entire prejudgment period.

The argument concerning the time in law school serves as yet another rehash of Paychex's Motion in Limine. The Court ruled, and rules again today, that Cooper continued his job search during this period. Accordingly, no reason exists to abate the interest owed for that period.

Taken together, the Court finds that its award of interest should be based on the Virginia statutory rate of 9% and the gross award, compounded in a conservative manner, i.e. at the conclusion of each year. Accordingly, Cooper is hereby awarded prejudgment interest in the amount of $33,415.06.

### X.

Paychex does not dispute the award of postjudgment interest. The award totals $383,687.06, the $350,272 awarded by the jury plus the $33,415.06 in prejudgment interest. Accordingly, the Court awards postjudgment interest payable at an annual rate of 5.64% from January 31, 1997.[6] The interest shall be applied to the entire amount of the award.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the attached Memorandum Opinion, it is hereby ORDERED that:

(1) Defendant Paychex, Inc.'s Motion for Judgment Notwithstanding the Verdict and/or a New Trial is DENIED;

(2) Defendant Paychex, Inc.'s Motion for a Stay of Judgment is DENIED;

(3) Prejudgment interest in the amount of $33,415.06 is awarded;

---

5. In fact, if the Court used Paychex's model for calculations, but with the properly applicable annually compounded 9% rate, Cooper would actually end up receiving about $50,000 in interest. Paychex's model paid interest on the entire amount for a year, which in effect paid interest in advance, i.e. on January 1 for that entire year's salary.

6. The January 30, 1997 Treasury auction fixed an equivalent coupon issue yield of 5.64%.

(4) Postjudgment interest is awarded on the total award of $383,687.06 payable at an annual rate of 5.64% from January 31, 1997; and

(5) The Clerk of the Court shall forthwith provide a copy of this Order and Memorandum Opinion to all counsel of record.