PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROSE L. GLYNNE, MD,

*Plaintiff-Appellee,*

v.

WILMED HEALTHCARE, d/b/a Wilson Medical Center,

*Defendant-Appellant,*

and

WILSON OB / GYN, PA; RICHARD E. HUDSON, Jointly and Severally; DANIEL P. MICHALAK, MD; ARTHUR H. HANSON; EDWARD S. BREZINA, MD; DENNIS S. KUK, MD; SUZANNE R. STARKEY, MD; WENDELL J. ZEE, MD; JAMES R. BUSCH, MD; JONATHAN G. DEWALD, MD,

*Defendants.*

No. 11-1859

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, Senior District Judge.
(5:08-cv-00602-H)

Argued: September 20, 2012

Decided: October 18, 2012

Before MOTZ, AGEE, and THACKER, Circuit Judges.

Vacated by published opinion. Judge Thacker wrote the opinion, in which Judge Motz and Judge Agee joined.

---

## COUNSEL

**ARGUED:** John Edward Pueschel, WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for Appellant. C. William Hinnant, Jr., MEDICOLEGAL CONSULTANTS, LLC, Anderson, South Carolina, for Appellee. **ON BRIEF:** James R. Morgan, Jr., WOMBLE CARLYLE SANDRIDGE & RICE, PLLC, Winston-Salem, North Carolina, for Appellant. Elizabeth McKinney, MCKINNEY LAW FIRM, PLLC, Wilson, North Carolina, for Appellee.

---

## OPINION

THACKER, Circuit Judge:

Wilson Medical Center ("WMC") appeals an amended order and judgment entered August 8, 2011, nunc pro tunc March 1, 2011. WMC argues that the district court improperly used the nunc pro tunc device to extend the period during which appellee Rose Glynne, M.D., could refile her dismissed state law claims in state court. Because the district court's purported nunc pro tunc entry supplied an order that in fact was not previously made, we must vacate the amended order and judgment.

I.

Dr. Glynne is a board-certified obstetrician/gynecologist who held privileges at WMC from October 1997 to November 2007 to practice obstetrics and gynecological surgery. On December 10, 2008, Glynne filed the complaint in the district

court against WMC; her former medical practice, Wilson Ob/Gyn, PA; the president of WMC; and eight individual physicians, alleging various violations of federal and North Carolina law. Among other things, Glynne claimed that the defendants used the medical peer review process in bad faith in order to force her to leave the hospital. During discovery, and prior to the filing of motions for summary judgment, Glynne voluntarily dismissed with prejudice all her federal claims and all defendants except WMC in a series of separate stipulations of dismissal. As a result, only her state law claims remained. For these state law claims, the limitations periods expired while Glynne was litigating her suit in the district court.

Because the federal claims had been dismissed and diversity jurisdiction was lacking, the district court declined to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c). On March 1, 2011, the district court entered an order (the "March Order") and accompanying judgment that dismissed the federal suit. J.A. 81, 84. The March Order concluded: "Therefore, this matter is DISMISSED without prejudice to allow plaintiff the opportunity to refile her state-law claims in the Superior Court of North Carolina, if desired." *Id.* at 82-83. Glynne did not appeal the March Order.

Even though the limitations periods for Glynne's state law claims had expired while she maintained her suit in federal court, 28 U.S.C. § 1367(d) provides that the period of limitation for any supplemental claim "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." The North Carolina Court of Appeals has indicated that the state has no applicable tolling period longer than the 30-day period set out in § 1367(d). *See Huang v. Ziko*, 511 S.E.2d 305, 308 (N.C. App. 1999) ("Because North Carolina has no applicable 'grace period' longer than the thirty-day period set out in 28 U.S.C.A. § 1367, the statute of limitations was

tolled while the federal action was pending and for thirty days thereafter.").[1] Accordingly, under the state appellate court's interpretation of § 1367(d), Glynne's claims had to be filed in state court no later than 30 days following entry of the district court order on March 1, 2011. However, she did not file her state court complaint until April 7, 2011.

On May 13, 2011, WMC moved to dismiss Glynne's state court action on the grounds that the statutes of limitation had expired on all of Glynne's claims during the pendency of the federal suit, and that Glynne had failed to file her dismissed state law claims within the 30-day tolling provision provided by § 1367(d).[2]

On May 26, 2011, Glynne filed a motion in the district court styled as a "Motion for Extension of Time to File Notice of Appeal or Alternatively for Relief by Way of Amending/Withdrawing the Court's Order of March 1, 2011." J.A. 86. In this motion, Glynne asked the district court, for the first time, to amend the March Order to provide 40 days in which to file in state court or, alternatively, to allow her an extension of time to appeal the court's discretionary decision not to exercise supplemental jurisdiction over the remaining state law claims. On June 8, 2011, Glynne amended her motion, again asking the district court to allow her additional time to file a notice of appeal of the March Order, or "alternatively and preferably" for relief pursuant to Rule 60(b), specifically requesting that the March Order be amended or withdrawn to allow Glynne 40 days from entry of the March Order to file in state court. *Id.* at 115-116. Appellant wrote in opposition to the motion.

---

[1]Relying on N.C. Gen. Stat. § 1A-1 Rule 41(b), Glynne vehemently contends that this is not a proper interpretation of North Carolina law; we need not and do not resolve that question here.

[2]According to appellant, the state court took WMC's motion under advisement and has since stayed the lawsuit pending the resolution of this appeal. Br. of Appellant at 9 n.2.

On August 4, 2011, the district court, without hearing argument or issuing any specific ruling on Glynne's motion, entered an amended order (the "Amended Order") and judgment. The Amended Order was the same in all respects to the March Order except that the district court added language stating that Glynne would be allowed 60 days to file her claims in state court. The district court wrote: "Therefore, this matter is DISMISSED without prejudice to allow plaintiff the opportunity to refile her state-law claims in the Superior Court of North Carolina, *within 60 days,* if desired." J.A. 204-205 (emphasis added). Although issued on August 4, 2011, the Amended Order and judgment were entered nunc pro tunc, thus asserting that they were effective as of the date of the March Order, on March 1, 2011. On August 8, 2011, WMC appealed the Amended Order and judgment.

## II.

As an initial matter, Glynne asserts that because the district court's Amended Order was entered in response to her motion for relief under Rule of Civil Procedure 60(b), we should review for abuse of discretion. *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011). We decline to adopt this view given that nothing in the record indicates that the district court specifically acted on Glynne's motion. Even if we construed the order below as granting Glynne's Rule 60(b) motion, and that an abuse of discretion standard thus applied, we would still review de novo the application of nunc pro tunc as a question of law. *See American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006) (the district court necessarily abuses its discretion when it commits an error of law).

## III.

## A.

Nunc pro tunc literally means "Now for then." *Maksymchuk v. Frank*, 987 F.2d 1072, 1075 n.2 (4th Cir. 1993) (quot-

ing 67 C.J.S. at 1 (1978)). We previously defined the doctrine as "'a procedure whereby a determination previously made, but for some reason improperly entered or expressed, may be corrected and entered as of the original time when it should have been, or when there has been an omission to enter it at all.'" *Id.* (quoting 67 C.J.S. at 2). The purpose of an order entered nunc pro tunc is to correct mistakes or omissions in the record so that the record properly reflects the events that *actually took place*. It may not be used to retroactively record an event that never occurred or have the record reflect a fact that never existed. *See Ex parte Buskirk*, 72 F. 14, 20-21 (4th Cir. 1896); *see also Rockingham Cnty. Dep't of Soc. Servs. v. Tate*, 202 N.C. App. 747, 751-52 689 S.E.2d 913, 916-17 (2010). We explained long ago that

> [t]he rule is now well established that nunc pro tunc orders cannot operate to modify orders theretofore made or to take the place of orders intended to be made but omitted. The courts can by such orders supply omissions in the record of what was actually done in the cause at a former time when it was under consideration, and by mistake or neglect not entered in the clerk's minutes or the court's records; but where the court has omitted to make an order which it could have made, and in fact intended to make, it cannot subsequently make the same nunc pro tunc, so as to make it binding upon the parties to the suit from the date when it was so intended to have been entered. . . .

*Buskirk*, 72 F. at 20-21. The passage of time has not altered the purpose and limitations of this rarely-used device. *See Maksymchuk*, 987 F.2d at 1075 n.2.

Indeed, the narrow confines of the doctrine are widely recognized. *See, e.g.*, *Romero-Rodriguez v. Gonzales*, 488 F.3d 672, 677 (5th Cir. 2007) ("Courts . . . have traditionally applied nunc pro tunc to correct limited types of errors,

namely clerical or other record keeping errors."); *Cent. Laborers' Pension, Welfare & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999) ("As we have reminded the district courts time and again, the only proper office of a nunc pro tunc order is to correct a mistake in the records; it cannot be used to rewrite history."); *Recile v. Ward*, 496 F.2d 675, 680 (5th Cir. 1974) ("The failure of a court to act, or its incorrect action, can never authorize a nunc pro tunc entry. If a court does not render judgment, or renders one which is imperfect or improper, it has no power to remedy any of these errors or omissions by treating them as clerical misprisions." (internal quotation marks omitted)), *modified on other grounds*, 503 F.2d 1374 (1974); *Crosby v. Mills*, 413 F.2d 1273, 1277 (10th Cir. 1969) ("An order may be entered nunc pro tunc to make the record speak the truth but it cannot supply an order which in fact was not previously made."); *Matthies v. R.R. Ret. Bd.*, 341 F.2d 243, 246 (8th Cir. 1965) ("An entry nunc pro tunc is an entry made now of something which was previously done, to have effect as of the former date, the function, object, or purpose of such entry being to make the record speak the truth . . . . It is not, on the other hand, the function of such entry by a fiction to antedate the actual performance of an act which never occurred . . . ." (internal quotation marks omitted)).

## B.

In view of the limited purpose of nunc pro tunc, the district court unquestionably erred by entering the Amended Order and judgment on August 4, 2011, nunc pro tunc March 1, 2011, which purported to extend by 60 days Glynne's time to refile her state law claims. Assuming for the sake of argument that the district court possessed the power to extend the 30-day tolling period, nothing indicates that the district court had in fact done so when the issue was previously under consideration. Because the doctrine of nunc pro tunc may only be employed to correct mistakes or omissions in the record so that the record properly reflects the events that actually took

place, the district court's attempt to modify its earlier order for the first time under the guise of nunc pro tunc was error.[3]

## IV.

Based on the foregoing reasons, the amended order and judgment of August 4, 2011, are

*VACATED*.

---

[3]The district court did not rely on any of the alternative arguments that appellant posits; those arguments involve questions of state law that North Carolina courts can best address.